IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

EARNEST MOON, as       *
Administrator of the Estate   *
of David Moon,       *
      *
    Plaintiff,       *     CV 119-217
      *
      v.       *
      *
SHERIFF PAUL REVIERE, et al.,   *
      *
    Defendant.       *

## O R D E R

Before the Court is Defendants Robert Williams, M.D. and Nerisha Terry's (the "Medical Defendants") motion for summary judgment (Doc. 84) and Defendants Sheriff Paul Reviere, Captain Leighton Taylor, Lieutenant Jessica Cobb, Sergeant David Davis, Officer Chris Durden, Officer Latoya Dye, Officer Steve McRee, Officer Antonio Norman, Officer Cassandra Smith, Officer Aries Hunter, Officer Harriett Brehm, Officer Keonna Lewis, Officer Anastasia Knotts, and Sergeant Lisa Gartrell's (the "Sheriff Defendants") motion for summary judgment (Doc. 88). For the following reasons, the summary judgment motions are **GRANTED.**

## I. BACKGROUND

Plaintiff filed the underlying suit against Defendants on December 18, 2019 (Doc. 1) and then filed an Amended Complaint

(Am. Compl., Doc. 38) on February 26, 2020.   In the Amended Complaint, Earnest Moon, serving as the administrator of the Estate of David Eugene Moon ("David Moon"), seeks redress for David Moon's treatment while an inmate at the Lincoln County jail ("the jail"). (Am. Compl., at 1.)   Specifically, Plaintiff asserts constitutional claims of deliberate indifference and alleges personal participation in the violation of David Moon's Eighth Amendment rights against all Defendants; supervisory liability claims against Defendants Reviere, Taylor, Cobb, and Williams; a policymaker liability claim against Defendant Reviere; and Georgia medical malpractice claims against the Medical Defendants.   (Id. at 13, 16, 18, 20.)   Plaintiff seeks compensatory damages for the violations of David Moon's civil rights, punitive damages against each Defendant to punish and deter, reasonable attorney's fees and expenses, judgment for the full value of David Moon's life, compensatory damages for David Moon's conscious pain and suffering, funeral expenses, and any further relief the Court deems just and proper.   (Id. at 23.)

An overview of the underlying facts is as follows.   On May 5, 2019, David Moon entered the jail after he was arrested pursuant to a warrant for arrest of a probationer.[1]   (Id. ¶ 24.)   Upon entry, he was subject to a medical screening.   (Id. ¶ 25.)   He

---

[1] The jail's booking report states that David Moon was charged with criminal trespass on May 5, 2019.   (Doc. 90-1, at 2.)

2

denied having alcohol use that could lead to withdrawal issues and the jailers reported they did not believe he was under the influence of alcohol.[2]  (Id.)  Based on the jailers' observations and the booking report, David Moon was put in the general population block.[3]  (Id. ¶ 26.)

Between May 7 and May 9, 2019, David Moon began to display symptoms of severe alcohol withdrawal, or delirium tremens.[4]  (Id. ¶ 27.)  He was not sleeping, was disturbing other inmates, and acting irrationally.  (Id. ¶ 29.)  At no point did any Defendant call for medical transport to a hospital or other medical facility, but after two days without sleep and continuing to disturb "cell block D," David Moon was moved to "cell block C" on May 9, 2019 at 7:03 AM.  (Id. ¶ 30.)

After moving, David Moon continued to experience hallucinations, delusional behavior, and other outward signs of alcohol withdrawal and refused to sleep.  (Id. ¶ 31.)  On May 10, 2019 at 1:03 AM, he was moved to an isolation cell for "medical observation" because he had been awake for several days, continued

---

[2] Plaintiff alleges David Moon was too drunk to answer any of the questions and the jailers falsely recorded information, therefore not properly medically screening him.  (See Am. Compl., ¶¶ 25-26.)
[3] David Moon had been in the jail on several prior occasions from 2013-2017.  (See Doc. 90-1, at 3-10.)  Further, the evidence shows it was known in the town and the jail that he was an alcoholic.
[4] According to Plaintiff, delirium tremens is a serious manifestation of alcohol withdrawal, is life threatening, and a true medical emergency. (Am. Compl., ¶ 28.)  Symptoms include hallucinations, confusion, disorientation, agitation, sleeping difficulty, loss of appetite, sweating, hypertension, and rapid heart rate.  (Id.)

to hallucinate, and was disrupting the other inmates.  (Id. ¶ 33.) David Moon continuously kicked the wall in his cell, resulting in bleeding toes that had to be re-bandaged on numerous occasions. (Id. ¶¶ 34, 37, 44-45.)

On May 10, 2019, after Defendant Terry observed him, Defendant Williams prescribed hydroxyzine[5] for David Moon to take three times a day.  (Id. ¶ 38.)  Despite the prescription, he continued to refuse food, kick the cell door, and experience delirium tremens. (Id. ¶ 41.)  On May 11, 2019, David Moon continued to show symptoms, despite his hydroxyzine prescription, and still would not eat. (Id. ¶ 49.)  Video surveillance of his cell shows him pacing, staggering, crawling, and stumbling around all morning.  (Id. ¶ 52.)  Just before 11:25 AM, David Moon crawled under his cot and loss consciousness.  (Id. ¶ 53.)  Around 4:45 PM, jailers and trustees entered his cell to check on him and moved him onto his cot while he remained unconscious.  (Id.)  The rest of that day and evening, jailers monitored David Moon in his unconscious state and ensured he was still breathing.  (Id. ¶ 54.)  At 11:25 PM, David Moon was found unresponsive and cool to the touch and jailers contacted EMTs.  (Id. ¶ 55.)  A subsequent autopsy by the Georgia Bureau of Investigation ("GBI") revealed David Moon's cause of

---

[5] Hydroxyzine is the generic name of Vistaril.  (Williams Dep., at 46.)

death was an intracerebral hemorrhage in an area of the brain commonly associated with high blood pressure. (Id.)

## A. Medical Defendants

Defendant Williams was the inmate doctor at the jail when David Moon died. (Id. ¶ 16; Williams Dep., Doc. 90-5, at 22-23.) He, along with his medical assistant Defendant Terry, evaluated inmates as needed. (Am. Compl., ¶ 17; Williams Dep., at 31-33.) Defendant Terry is a certified nursing assistant.[6] (Am. Compl., ¶ 17; Terry Dep., Doc. 90-6, at 54.) Defendant Williams visited the jail about every two weeks, or as requested, but Defendant Terry visited Monday through Friday, twice a day. (Williams Dep., at 31-33.) Defendant Terry passed out medications, listened to inmates' complaints, and reported her findings to Defendant Williams. (Terry Dep., at 14.) Defendant Williams provided treatment instructions but also had a protocol book at the jail for the Medical Defendants to reference when addressing inmates' issues. (Id. at 54; Williams Dep., at 39.)

Defendant Williams first saw David Moon during this incarceration on Wednesday, May 8, 2019 because he had complained to Defendant Terry that something was hurting when he walked. (Terry Dep., at 34; Williams Dep., at 58-59.) Defendant Williams

---

[6] Defendant Terry was not a registered nurse even though most inmates and jailers referred to her as "Nurse Terry" and the jail was billed under "nursing services" for her work. (Doc. 97-7, at 2.)

evaluated David Moon, discovered it was a hernia, put the hernia back in place, and told him they would keep an eye on it. (Williams Dep., at 59.) This was the last time Defendant Williams saw David Moon, and he did not hear any further information about him until two days later, on Friday, May 10th. (Id. at 60-62.)

Defendant Terry was present for the hernia examination, but also saw David Moon multiple times that week during her daily jail visits. On Friday morning, May 10, 2019, Defendant Terry was told David Moon was moved to isolation because he was keeping the other inmates up, so she informed Defendant Williams and he instructed her to observe David Moon and report back. (Terry Dep., at 39-41.) After observing him, Defendant Terry believed David Moon to be calm but reported that he told her he was "pulling a truck" while standing inside his cell. (Id. at 41.) Upon hearing this report, Defendant Williams suggested a Vistaril prescription, but told Defendant Terry to give David Moon Benadryl until the prescription could get delivered to the jail. (Id. at 41-42.)

That evening, David Moon was brought to Defendant Terry because "he had been kicking the wall and kicked his toenail off," so she cleaned and bandaged his foot. (Id. at 46.) She again reported to Defendant Williams and he told her to give David Moon Tylenol PM to try and help him rest in lieu of the Vistaril

prescription.[7]   (Id. at 47; Williams Dep., at 74-75.)   Defendant
Terry reported David Moon "wasn't talking out of his head" and "he
wasn't acting up or anything," but the jailers had told her that
he had not gotten any sleep.   (Terry Dep., at 49.)   This was the
last time Defendant Terry saw David Moon.

## B. Sheriff Defendants

The individual Sheriff Defendants' involvement and encounters
with David Moon are outlined in greater detail in the analysis
section below.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, motions for summary
judgment are granted "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." FED. R. CIV. P. 56(a).   "An issue
of fact is 'material' if . . . it might affect the outcome of the
case . . . [and it] is 'genuine' if the record taken as a whole
could lead a rational trier of fact to find for the nonmoving
party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60
(11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998

---

[7] Defendant Williams stated he did not want to give David Moon both drugs
because they are both sedatives and he "didn't want to sedate him too
heavily."  (Williams Dep., at 76.)

(11th Cir. 1992)).  The Court must view factual disputes in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor."  <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).  The Court should not weigh the evidence or determine credibility.  <u>Anderson</u>, 477 U.S. at 255.

The Defendants here do not bear the burden of proof at trial, and therefore may "satisfy [their] initial burden on summary judgment in either of two ways."  <u>McQueen v. Wells Fargo Home Mortg.</u>, 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115-16 (11th Cir. 1993)).  First, the Defendants "may simply show that there is an absence of evidence to support the [Plaintiff's] case on the particular issue at hand."  <u>Id.</u>  (citation omitted).  If this occurs, Plaintiff "must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  <u>Id.</u>  (citation omitted).  Or second, Defendants may "provide affirmative *evidence* demonstrating that the [Plaintiff] will be unable to prove its case at trial.  <u>Id.</u> (citation omitted and alterations in original).

Further, the Southern District of Georgia's Local Rules require:

> [I]n addition to the brief, there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof. Each statement of material fact shall be supported by a citation to the record. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.

L.R. 56.1, SDGa. "Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the parties have specifically cited and legal arguments they have expressly advanced. See id.

In this action, the Clerk of Court provided Plaintiff notice of the summary judgment motions, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 85-1, 89.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per

curiam), are satisfied.  Plaintiff responded to both motions for summary judgment (Docs. 95, 97) and the Medical Defendants replied (Doc. 98).  The time for filing materials has expired, the issues have been thoroughly briefed, and the motions are now ripe for consideration.  In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

## III. DISCUSSION

## A. Medical Defendants' Motion for Summary Judgment (Doc. 84)

Plaintiff asserts the Medical Defendants, in their individual capacities, exhibited deliberate indifference to David Moon's serious medical needs, violating his constitutional rights under the Eighth Amendment.  (See Am. Compl., at 14-15.)  Further, Plaintiff brings a Georgia law medical malpractice claim against the Medical Defendants.  (Id. at 20-23.)  The Medical Defendants move for summary judgment on Plaintiff's 42 U.S.C. § 1983 claims on the ground of qualified immunity and, alternatively, on the merits.  (Doc. 84, at 10.)  They also move for summary judgment on Plaintiff's medical malpractice claim on the ground of official immunity and, alternatively, on the merits.  (Id. at 23-25.)  The Court addresses the causes of action in turn.

   i. Section 1983 Deliberate Indifference Claims

      a. *Legal Standard*

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (alterations and internal quotation marks omitted). "Qualified immunity from suit is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (citing Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)).

The Court uses a two-step burden shifting analysis to determine whether a defendant is entitled to qualified immunity. "[T]he government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346). To determine whether a government official acted within the scope of their discretionary authority, courts consider whether the

11

official "(a) perform[ed] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265-66 (11th Cir. 2004) (citation omitted). In this case, the Court is satisfied the Medical Defendants acted within their discretionary authority when the alleged conduct took place. Defendants Williams and Terry were performing their jobs as medical staff for the jail and the treatment of David Moon was well within the scope of their authority. The Court therefore moves to the second step of the analysis.

"Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)). Accordingly, the Court must turn to the evidence to determine whether Plaintiff can demonstrate that the Medical Defendants are not entitled to qualified immunity. Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016). Plaintiff must allege facts to prove the Defendants' conduct violated a constitutional right. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). "If a constitutional right would have been violated under the *plaintiff's* version of the facts, the

court must then determine 'whether the right was clearly established.'" Id. (quoting Saucier v. Katz, 533 U.S. 194 (2001)).

Plaintiff alleges Defendants violated the constitutional rights of David Moon under the Eighth Amendment by exhibiting deliberate indifference to his serious medical needs. Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "[T]he deliberate indifference proscribed by the Eighth Amendment must be so egregious as to constitute cruel and unusual punishment . . . ; it must involve 'the unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" Brown v. Thompson, 868 F. Supp. 326, 331 (S.D. Ga. 1994) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim for medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Brown, 868 F. Supp. at 331 ("Accidents, mistakes, negligence, and medical malpractice 'are not constitutional violation[s] merely because the victim is a prisoner.'" (citation omitted)).

Therefore, to prove the alleged deliberate indifference, Plaintiff must show the Medical Defendants "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 842 (1994). The Eleventh Circuit requires the satisfaction of both a subjective and objective inquiry to prove deliberate indifference. See Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). "First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." Id. (internal citations omitted).

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019) (quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009)). The Eleventh Circuit has recognized alcohol withdrawal as a serious medical need, so the Court is satisfied a serious medical need was present here. See Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425-26 (11th Cir. 1997), overruled on other grounds by Patel v. Lanier Cnty., 969 F.3d 1173 (11th Cir. 2020). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was

14

not averted. A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety.'" <u>Farmer</u>, 511 U.S. at 844 (citation omitted). The Eleventh Circuit in "<u>Estelle</u> requires [] not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment." <u>Howell v. Evans</u>, 922 F.2d 712, 721 (11th Cir. 1991).[8]

Consequently, to establish deliberate indifference, Plaintiff "must prove: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>Melton v. Abston</u>, 841 F.3d 1207, 1223 (11th Cir. 2016). "The meaning of 'more than [mere] negligence' is not self-evident." <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1327 (11th Cir. 2007). However, in the Eleventh Circuit, "[c]onduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing <u>Estelle</u>, 429 U.S. at 106). Beyond this, Plaintiff must also show the alleged violation *caused* David Moon's death. <u>Brooks v. Wilkinson Cnty.</u>, 393 F. Supp. 3d 1147, 1162 (M.D.

---

[8] This holding was vacated by 931 F.2d 711 (11th Cir. 1991) and then reinstated by unpublished order on June 24, 1991.

Ga. 2019) (citing Troupe v. Sarasota Cnty., 419 F.3d 1160, 1165 (11th Cir. 2005)).

### b. *Defendant Williams*

Following the standard set forth above, the Court is satisfied Defendant Williams had subjective knowledge of a risk of serious harm, because he knew David Moon was going through alcohol withdrawal, fulfilling element (1). The evidence shows David Moon suffered from alcohol withdrawals in the days leading up to his death. However, the evidence does not show he was aware David Moon was on the verge of death just because he knew David Moon was an alcoholic and going through withdrawal.

As to elements (2) and (3), Plaintiff must show Defendant Williams disregarded the risk of David Moon's alcohol withdrawal, and that he disregarded it by conduct that was more than mere negligence. First, Plaintiff alleges David Moon went "without any treatment" (Am. Compl., at 15) which is inconsistent with the evidence and his allegations that show Defendant Williams prescribed, and David Moon was taking, hydroxyzine intended to help his withdrawal symptoms and ability to sleep. (Id. at 9.) These steps, although inadequate in Plaintiff's eyes, show Defendant Williams did not disregard David Moon's condition. "[W]hen a prison inmate has received medical care, courts hesitate to find a[n] Eighth Amendment violation." McElligott v. Foley, 182 F.3d 1248, 1259 (11th Cir. 1999) (citation omitted).

However, "the Eleventh Circuit [has] clarified that not just any treatment will do – an inmate is constitutionally entitled to medical care that is adequate to meet the needs of their particular situation." Brooks, 393 F. Supp. 3d at 1164 (citing Bingham, 654 F.3d at 1176 (holding that inadequate or cursory care can give rise to a claim for deliberate indifference)). "When a claim turns on the quality of treatment provided, however, 'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." Ajibade v. Wilcher, No. 4:16-cv-82, 2019 WL 1412115, *17 (S.D. Ga. Mar. 28, 2019) (quoting Melton, 841 F.3d at 1224). Plaintiff's allegations are directly in line with a difference in medical opinions; therefore, they do not support a claim of deliberate indifference.

Defendant Williams examined David Moon only once, on May 8, 2019, because of a hernia and stated David Moon was not in withdrawal when he saw him that day. (Williams Dep., at 58.) Beyond this encounter, Defendant Williams stayed informed about David Moon's symptoms through Defendant Terry and instructed her in line with the jail protocols. Defendant Williams stated he did not administer an additional physical examination after hearing about David Moon's symptoms because he was not in full delirium tremens and was simply going through alcohol withdrawal. (Williams Dep., at 96-97.) The Court does not find Defendant Williams

disregarded the risk of David Moon's alcohol withdrawal or chose not to provide medical treatment. Rather, he prescribed hydroxyzine to be given three times per day. (Am. Compl., ¶ 38; Williams Dep., at 46, 68.) Plaintiff contends, relying on his experts' opinions, that this was not the correct medicine to treat David Moon, and "use of these drugs showed a lack of competence." (Doc. 97-7, at 7.) However, Defendant Williams' testimony illustrates this was in line with the jail's protocols, which were based on the fact "Vistaril seemed to help . . . most people with detox." (Williams Dep., at 41.) The facts also show Defendant Williams treated alcohol withdrawal many times in a jail setting prior to David Moon and never had anyone die, or even hospitalized, so there were no apparent issues with the policy. (Williams Dep., at 21-22.) Once again, a mere difference in medical opinion is not enough to establish a claim of deliberate indifference and therefore Plaintiff has not proven Defendant Williams acted with more than mere negligence.

The Eleventh Circuit has addressed similar situations. In Howell, the plaintiff argued the defendant doctor should have known the inmate's condition could deteriorate at any minute, and therefore should have provided greater treatment. 922 F.2d at 721. However, the Eleventh Circuit held that while the facts might show the doctor committed malpractice, "none of the[] allegations rise beyond negligence to the level of a refusal to treat as

outlined by Estelle." Id. (citing Estelle for holding that mere negligent diagnosis or treatment of a patient does not constitute deliberate indifference). Like the Plaintiff here, the plaintiff in Howell argued the doctor "should have known" the inmate's condition could deteriorate. Plaintiff alleges Defendant Williams was "aware that David Moon was at high risk for acute alcohol withdrawal if left untreated." (Am. Compl., ¶ 72.) However, Defendant Williams' standard approach was to monitor inmates in the same manner he monitored David Moon. (Williams Dep., at 85.) Nothing in the facts shows Defendant Williams was aware of David Moon's beyond dire situation and that he chose not to treat him; rather, he was aware of the withdrawal and treated him accordingly. (See id. ("I would agree [delirium tremens is] a serious medical condition . . . [but] [i]t is something that we treat in the jail. We consider it an emergency situation, but we treat it in the jail.")). The Court finds Defendant Williams responded reasonably to the risk, even though the harm was ultimately not averted. See Farmer, 511 U.S. at 844 (holding prison officials may be free from liability if they reasonably responded to health risk, even if harm was not averted). Therefore, the Court finds Plaintiff has proven, at most, negligent treatment, which does not constitute deliberate indifference pursuant to Estelle.

Furthermore, in Adams v. Poag, the plaintiff argued the doctor "did not diligently pursue alternative means of treating [the

19

inmate's] condition." 61 F.3d 1537, 1546 (11th Cir. 1995). The Eleventh Circuit again found this did not rise beyond negligence to the point of deliberate indifference as outlined by <u>Estelle</u>, and therefore the doctor was entitled to qualified immunity. <u>Id.</u> This is again similar to the facts at hand, and just because Defendant Williams did not pursue alternative means of treating David Moon does not support a claim of deliberate indifference. <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize [deliberate indifference].") "When the claim turns on the quality of treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" <u>Blanchard v. White Cnty. Det. Ctr. Staff</u>, 262 F. App'x 959, 964 (11th Cir. 2008) (citation omitted). The Court finds Defendant Williams treated David Moon as he did for all inmates in alcohol withdrawal and that the care was minimally adequate.

Based on the foregoing, although Plaintiff alleges there was not enough done to save David Moon, the evidence fails to show Defendant Williams disregarded the risk of the alcohol withdrawal, and that it was disregarded by conduct that was more than mere negligence. Therefore, Plaintiff has not met his burden to demonstrate qualified immunity is inappropriate, and Defendant

Williams is granted qualified immunity as to Plaintiff's deliberate indifference claim.

### c. *Defendant Terry*

Defendant Terry visited with David Moon on multiple occasions, reported her observations to Defendant Williams, and he instructed her as to the proper treatment. Defendant Terry also bandaged and re-bandaged David Moon's bloody toes and administered the Vistaril, Benadryl, and Tylenol PM on various occasions. The jailers reported to Defendant Terry how David Moon was acting, she would visit and interact with him to obtain her own observations, and then she would report to Defendant Williams.[9]   Regarding treatment, Defendant Terry followed Defendant Williams' instructions, in line with the jail's protocols. Using the standards set forth above, the Court finds qualified immunity is appropriate for Defendant Terry.

The facts show Defendant Terry followed the directions given by Defendant Williams, and she cannot be found deliberately indifferent for doing so. "A nurse is not deliberately indifferent when he/she reasonably follows a doctor's orders." Dunn v. Hart, No. 5:13-cv-131, 2016 WL 5661058, at *7 (S.D. Ga. Sept. 29, 2016) (citation omitted); see also Bauer v. Kramer, 424 F. App'x 917,

---

[9] There is also evidence that two of David Moon's fellow inmates were also telling Defendant Terry about David Moon's condition. (See Doc. 97, at 4.)   These facts simply go to prove that Defendant Terry knew about David Moon's serious medical condition, which the Court has already found to be sufficiently proven.

919 (11th Cir. 2011) ("A nurse is not deliberately indifferent when she reasonably follows a doctor's orders by administering prescribed medication to an inmate.").[10]   Further, no evidence illustrates Defendant Terry refused to treat David Moon or delayed such treatment, as required by Estelle.   Consequently, Defendant Terry is protected by qualified immunity.

Based on these findings, the Court finds Defendant Williams and Defendant Terry are entitled to qualified immunity as to the deliberate indifference claims against them.

### ii. Georgia Medical Malpractice Claim

Plaintiff also asserts the Medical Defendants, in their individual capacities, committed medical malpractice in violation of Georgia law. (Am. Compl., at 20.) The Medical Defendants claim they are both entitled to official immunity under Georgia law, or in the alternative, summary judgment on the merits for failure to establish causation. (Doc. 84, at 23, 25.) Plaintiff argues they are not public officials under state law because Defendant Williams is in private practice, Defendant Terry merely worked for him, they both contracted with a government entity, and therefore, they are not entitled to official immunity.   (Doc. 97, at 17-18.) Plaintiff also contends causation is established through his

---

[10] Although Defendant Terry is not a registered nurse, her position as a certified nursing assistant is equivalent to that of a nurse for purposes of this analysis.  Whether a nurse or a nursing assistant, she was still required to follow the doctor's medical orders.

experts' testimony. (Id.) Before addressing the cogency of the actual medical malpractice claim, the Court first addresses the official immunity defense.

    a. *Legal Standard*

The Supreme Court of the United States has found "[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed[] to the State." West v. Atkins, 487 U.S. 42, 55-56 (1988). Further, the Supreme Court of Georgia has held that physicians acting within the "scope of their state employment" are entitled to official immunity. Shekhawat v. Jones, 746 S.E.2d 89, 93 (Ga. 2013). Therefore, a physician's treatment of inmates is state action, attributable to the State, even when he is employed at the jail pursuant to a contractual arrangement and maintains a private practice apart from his work at the jail. See West, 487 U.S. at 44 n.1, 56-58. Therefore, the Medical Defendants were state actors while treating inmates at the jail.

Official immunity protects county officers and employees from certain state-law claims when the claim arises out of the performance of a discretionary function. See Keele v. Glynn Cnty., 938 F. Supp. 2d 1270, 1308-09 (S.D. Ga. 2013). However, "[i]t does not protect officials who negligently perform or fail to perform their ministerial functions" or those who "act with actual malice or intent to cause injury in the performance of their

official functions." Id. at 1309 (citations and quotations omitted). Actual malice requires "more than reckless disregard for human life," and instead requires "a deliberate intention to do wrong." Id. (citations omitted).

"Whether a duty is ministerial or discretionary turns on the character of the specified act itself." Mann, 588 F.3d at 1309 (quoting Reed v. DeKalb Cnty., 589 S.E.2d 584, 587 (Ga. Ct. App. 2003)). "A discretionary act 'calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.'" Id. (quoting Teston v. Collins, 459 S.E.2d 452 (Ga. Ct. App. 1995)). On the other hand, a ministerial act is "one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Id. (quoting Standard v. Hobbs, 589 S.E.2d 634, 636 (Ga. Ct. App. 2003)).

b. *Facts*

Plaintiff alleges the Medical Defendants violated the requisite standard of care by failing to perform a complete examination on David Moon, take and record vital signs, record a thorough history, or provide any medical treatment to David Moon. (Am. Compl., at 21.) Further, he alleges Defendant Williams violated the standard of care by prescribing hydroxyzine to treat David Moon's delirium tremens, when he should have been transported

24

to a hospital or "aggressively treated." (Id.)   As to Defendant
Terry, Plaintiff alleges she deviated from the standard of care
and was negligent by failing to recognize David Moon's emergency
and failing to fully inform Defendant Williams of David Moon's
condition.    (Id. at 21-22.)    Plaintiff argues the Medical
Defendants' deviations from the standard of care caused David Moon
great suffering and ultimately led to his death.   (Id.)

     c. *Analysis*

The Medical Defendants assert Plaintiff's allegations involve
their "determinations of what medical treatment to provide" and
the "negligent diagnosis and treatment of [David] Moon's medical
condition," which are discretionary acts and protected by official
immunity.   (Doc. 84, at 24.)   The Court first determines whether
these were discretionary acts.

Georgia law has clarified that the provision of medical care
in jails must be provided, as it is a fundamental right and
mandated by statute.   See Howard v. City of Columbus, 521 S.E.2d
51, 66 (Ga. Ct. App. 1999); O.C.G.A. §§ 42-5-2(a), 42-4-4(a)(2),
42-4-32(d).  Because it is a fundamental right, it is ministerial,
not discretionary, and therefore typically not subject to
qualified immunity.   Id.    However, determining "what medical
treatment to provide *is* an act of discretion subject to official
immunity." Graham v. Cobb Cnty., 730 S.E.2d 439, 443-44 (Ga. Ct.

App. 2012) (citing Howard, 521 S.E.2d at 66) (emphasis in original).

Plaintiff's allegations involve the Medical Defendants' determination of *what* treatment to provide. None of the evidence shows the Medical Defendants ignored David Moon, only that they did not treat him in the way Plaintiff saw fit. Plaintiff's claim turns on the decisions made by the Medical Defendants, which are discretionary acts, and involve the use of medical judgment. "Employees of a county sheriff's department are immune from liability for negligent acts that are discretionary rather than ministerial." Schmidt v. Adams, 438 S.E.2d 659, 660 (Ga. Ct. App. 1993) (citation omitted). Even if Plaintiff's allegations show some negligence in David Moon's treatment, that is insufficient to overcome official immunity because the Medical Defendants were using their medical judgment and discretion when treating David Moon. Further, if there was a jail protocol requiring transfer to a medical facility for inmates in David Moon's condition that was ignored, there could have been a breach of a ministerial duty, but that is not the case here. See Brooks, 393 F. Supp. 3d at 1170 (finding jail officials not entitled to official immunity because defendants breached a ministerial duty by failing to provide care that they are obligated to provide). The treatment Defendant Williams chose, and Defendant Terry carried out, was a judgment call in line with jail protocols. Ultimately, the Medical

Defendants used their discretion to determine how to treat David Moon, and after treating withdrawal cases in the past, this is a decision in line with the Medical Defendants' responsibilities. The Court is satisfied these decisions meet the definition of discretionary acts, entitling the Medical Defendants to official immunity as to Plaintiff's Georgia medical malpractice claims.

## B. Sheriff Defendants' Motion for Summary Judgment

Plaintiff alleges the Sheriff Defendants, in their individual capacities, exhibited deliberate indifference to David Moon's medical needs, violating his constitutional rights under the Eighth Amendment. (See Am. Compl., at 13-15.) The Sheriff Defendants move for summary judgment on Plaintiff's Section 1983 claims on the ground of qualified immunity, and also argue that as a pre-trial detainee, David Moon was not protected by the Eighth Amendment. (Doc. 88, at 2.) They also move for summary judgment on Plaintiff's supervisory claims, alleging Plaintiff cannot prove a causal connection between the supervisors' conduct and the alleged violations. (Id. at 3.) Further, Defendant Reviere asserts Plaintiff cannot meet his burden as to the policymaker liability claim. (Id. at 5.) The Court addresses the causes of action in turn.

### i. Application of the Eighth Amendment

As a preliminary matter, the Sheriff Defendants assert David Moon was not afforded the protections of the Eighth Amendment

because he was a pre-trial detainee. (Doc. 88-2, at 7.) In response, Plaintiff argues David Moon was being held without bond on a probation violation warrant and that even if he was only a pre-trial detainee, he was still afforded the same constitutional protections under the Due Process Clause of the Fourteenth Amendment as other detainees. (Doc. 95, at 12-13.)

Plaintiff states David Moon was held at the jail pursuant to a "Warrant for Arrest of Probationer issued by the Superior Court of Lincoln County." (Am. Compl, ¶ 24.) The arrest records state David Moon was arrested for criminal trespass. (Doc. 90-1, at 2.) Plaintiff asserts no claims under the Fourteenth Amendment, only under the Eighth Amendment. In Smith v. Franklin Cnty., the Eleventh Circuit held that the decedent, who was arrested on an outstanding probation violation warrant and for driving without a license, was a pre-trial detainee while in jail and therefore his deliberate indifference claims were governed by the Due Process Clause of the Fourteenth Amendment, not the Eighth. 762 F. App'x 885, 887-89 (11th Cir. 2019) (citing Jackson v. West, 787 F.3d 1345, 1352 (11th Cir. 2015)). In the case of pre-trial detainees, "Eighth Amendment prohibitions against cruel and unusual punishment do not apply." Jackson, 787 F.3d at 1352 (citation omitted). Nevertheless, "the minimum standard allowed by the [D]ue [P]rocess [C]lause is the same as that allowed by the [E]ighth [A]mendment for convicted persons." Id. Therefore, the Eleventh

Circuit has "historically [] treated convicted prisoners' Eighth Amendment claims and pretrial detainees' Fourteenth Amendment claims identically." White v. Cochran, No. 16-17490-G, 2017 WL 6492004, at *2 (11th Cir. Nov. 27, 2017) (citing Keith v. DeKalb Cnty., 749 F.3d 1034, 1044 n.35 (11th Cir. 2014)). Because the standards are the same, and neither Plaintiff nor the Sheriff Defendants assert sufficient facts or argument on this issue, the Court is reluctant to resolve the suit on this simple procedural issue. The Court will therefore address the remainder of the Sheriff Defendants' defenses.

### ii. Section 1983 Deliberate Indifference Claims

As an initial matter, "[p]rison officials are entitled to rely on the opinions, judgment and expertise of a prison medical staff to determine a medically necessary and appropriate cause of treatment for an inmate." Truschke v. Chaney, No. 5:17-cv-93, 2018 WL 814579, at *5 (S.D. Ga. Feb. 9, 2018), report and recommendation adopted, 2018 WL 1513354 (S.D. Ga. Mar. 27, 2018) (citation omitted). "[It] is widely held that non-medical prison personnel are generally entitled to rely on the expertise of the medical staff and are not required to second-guess the medical staff's judgment regarding an inmate's care." Id. (citations omitted and alterations adopted); see also Keith, 749 F.3d at 1050 (finding the law does not require that prison officials ignore the determination and recommendation of medical staff). Based on this,

the Sheriff Defendants are protected from Plaintiff's deliberate indifference claims. They were justified in following the treatment plan set forth by the Medical Defendants, did not just turn a blind-eye to the situation, and were also aware the treatment plan was in line with the jail's alcohol withdrawal protocols. Nevertheless, the Court will address each Sheriff Defendant's involvement with David Moon during his incarceration.

The Sheriff Defendants argue they are entitled to qualified immunity because they acted within their discretionary authority at all times relevant to the suit and there was no deliberate indifference or causation between the alleged violations and David Moon's death. Plaintiff disagrees, claiming the Defendants, collectively, were deliberately indifferent to the medical needs of David Moon. However, it is important to note that "[n]o liability arises under the Constitution for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoting Farmer, 511 U.S. 825.) Accordingly, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual [d]efendant must be judged separately and on the basis of what that person knows." Id. (citations omitted). The Court will therefore analyze each Sheriff Defendant individually using the qualified immunity and deliberate indifference standards outlined above. Count I simply

alleges "Defendants" were deliberately indifferent (Am. Compl., at 13-16), without specifying the acts of each individual, so the Court will outline the particularized facts for each Defendant to better analyze each person's immunity.[11]   In Plaintiff's opposition, he more thoroughly addresses each Defendants' involvement with David Moon, and clarifies he "does not seek to establish his claims by virtue of collective knowledge." (Doc. 95, at 18.)

   a. *Sheriff Paul Reviere*

   Defendant Reviere was the elected sheriff of Lincoln County and responsible for running the jail. (Am. Compl., at 2.) He was the final decision maker regarding the policies, supervision, and training of jailers. (Id.) Plaintiff alleges that by directing others or failing to intervene, Defendant Reviere participated in the unconstitutional conduct of the other Defendants, resulting in David Moon receiving no medical attention. (Id. at 16.) Further, Plaintiff alleges Defendant Reviere was subjectively aware of David Moon's serious medical needs and was deliberately indifferent to those needs by failing to direct his subordinates to seek immediate medical treatment, and as a result, David Moon suffered. (Id. at 17.)

---

[11] It is not the duty of the Court to decipher which facts apply to which Defendants; however, the Court must outline the facts to sufficiently analyze each Defendant's involvement with David Moon. See Preis, 508 F. Supp. 2d at 1068.

"Discretionary authority includes the job-related powers and responsibilities that the public official has in the general fulfillment of his official duties." <u>Blackshear v. City of Miami Beach</u>, 799 F. Supp. 2d 1338, 1344 (S.D. Fla. 2011) (citation omitted).   The acts do not necessarily require an element of choice, but "are discretionary if 'they are of a type that fell within the employee's job responsibilities.'" <u>Perkins v. City of Creola</u>, 713 F. Supp. 2d 1326, 1338 (S.D. Ala. 2010) (quoting <u>Holloman</u>, 370 F.3d at 1265).   Plaintiff's allegations involve Defendant Reviere's decision making, policy making, and training methods, which are all within his job-related powers and responsibilities.   The Court is therefore satisfied Defendant Riviere acted within his discretionary authority at all relevant times.[12]   Consequently, it is Plaintiff's burden to show qualified immunity is inappropriate by illustrating that Defendant's conduct violated a constitutional right.

The Court is satisfied Plaintiff proved David Moon was suffering from a serious medical need, but there are insufficient

---

[12] In the Sheriff Defendants' motion for summary judgment, they state "[i]t is undisputed that the Sheriff Defendants acted within their respective discretionary authority." (Doc. 88-2, at 8 (citing Doc. 88-7 – Plaintiff's interrogatories)).   Then in Plaintiff's response, he states "defendants do not contend that they were not carrying out their discretionary functions as government officials."   (Doc. 95, at 15.) But in Plaintiff's interrogatories, he stated "Plaintiff does not contend that Defendant Brehm's acts or omissions were ministerial." (Doc. 88-7, at 2.)   The allegations regarding this distinction are very inconsistent and therefore, the Court will address this factor for each Defendant.

facts illustrating Defendant Reviere acted with an attitude of deliberate indifference to that need. The facts show Defendant Reviere never even saw David Moon, and imputed knowledge cannot be the basis of a deliberate indifference claim. See Burnette, 533 F.3d at 1331. Therefore, there is insufficient evidence to prove Defendant Reviere violated David Moon's constitutional rights, and he is entitled to qualified immunity.

### b. *Captain Leighton Taylor*

Defendant Taylor was a captain with the Lincoln County Sheriff's Office and responsible for running the jail. (Am. Compl., at 2.) She oversaw jail administration, was a policy maker and supervisor, and was responsible for the care, custody, and control of inmates. (Id.) Plaintiff alleges that by directing others or by failing to intervene, Defendant Taylor participated in the unconstitutional conduct of the other Defendants, resulting in David Moon receiving no medical attention. (Id. at 16.) Further, he alleges Defendant Taylor was subjectively aware of David Moon's serious medical needs and was deliberately indifferent by failing to direct her subordinates to seek immediate medical treatment, and as a result, David Moon suffered. (Id. at 17.) Defendant Taylor was away at "school" during most of David Moon's incarceration but did visit the jail and briefly observe him on video surveillance before he died. (Doc. 90-15, at 28, 37.)

33

The Court adopts the analysis used for Defendant Reviere and finds Defendant Taylor also acted within her discretionary authority, and Plaintiff has alleged insufficient facts to prove a constitutional violation.   Therefore, Defendant Taylor is entitled to qualified immunity.

### c. *Lieutenant Jessica Cobb*

Defendant Cobb was a lieutenant with the Lincoln County Sheriff's Office and immediate supervisor of certain jailer Defendants. (Am. Compl., at 2.)  Defendant Davis contacted her on May 11, 2019 at 2:00 AM to inform her of David Moon's perilous situation. (Id. at 11.)  Defendant Cobb told Defendant Davis there was nothing further they could do, just to continue following the Medical Defendants' instructions. (Id.)  She knew Defendant Terry had seen David Moon and Defendant Williams had prescribed something, so she did not ignore the situation. (See Doc. 95-12, ¶ 55.)

The Court again finds this Defendant acted within her discretionary authority.   She performed a job-related function through means within her power. Although she was informed of David Moon's condition, Plaintiff alleges no facts to show she ever saw David Moon, or acted deliberately indifferent to his condition, and again, imputed knowledge cannot be the basis of a deliberate indifference claim. See Burnette, 533 F.3d at 1331.   Therefore,

the evidence does not prove Defendant Cobb violated a constitutional right, and she is entitled to qualified immunity.

### d. *Sergeant David Davis*

Defendant Davis was a jailer on duty May 10, 2019 and personally witnessed David Moon's delirium tremens. (Am. Compl., at 8.) On the evening of May 10, 2019, Defendant Davis took David Moon to the medical room to get his foot bandaged by Defendant Terry. (Id. at 10.) Defendant Davis returned David Moon to isolation, and even though David Moon was unstable and hallucinating, he took no further action. (Id.) Later that evening, Defendant Davis took David Moon back to the medical room to get rebandaged and again returned him to isolation without additional medical care. (Id. at 10-11.)

On May 11, 2019 at 2:00 AM, Defendant Davis contacted his supervisor, Defendant Cobb, to inform her of David Moon's situation. (Id.) He was told there was nothing more they could do. (Id.) At 5:00 AM, Defendant Davis again took David Moon to the medical room, rewrapped his foot, cleaned blood in his cell, and returned him to isolation. (Id.) On the evening of May 11, 2019, Defendant Davis observed David Moon unconscious on his bunk, continued to monitor him, and ensured he was still breathing throughout that evening. (Id. at 13.)

Defendant Davis also acted within his discretionary authority. Defendant Davis saw David Moon suffering from delirium

tremens, reached out to his supervisor to see if there was anything further that should be done, but was told no. Nothing in the allegations show Defendant Davis was deliberately indifferent to David Moon's condition. In fact, he checked on David Moon numerous times, ensured his wounds were taken care of, and questioned what else could be done. Because the evidence does not prove a constitutional violation, the Court finds Defendant Davis is entitled to qualified immunity.

e. *Officers Chris Durden, Latoya Dye, and Steve McRee*

Defendant Durden was also a jailer on duty May 10, 2019 and personally witnessed David Moon's delirium tremens. (Am. Compl., at 8.) Defendant Durden, along with Defendant Davis, took David Moon to the medical room on May 10, 2019 to get his toe bandaged by Defendant Terry, and then returned him to isolation. (Id. at 10.) On May 11, 2019, Defendant Durden cleaned blood from David Moon's feet and again witnessed his symptoms but provided no additional care. (Id. at 12.) Later that morning, after David Moon had crawled under his cot and was unconscious, Defendant Durden rebandaged his feet and directed two trustees to put David Moon on his cot. (Id.)

Defendant Dye was a jailer on duty May 10, 2019 and personally witnessed David Moon's delirium tremens. (Id. at 8.) During her shift May 11, 2019, she again witnessed David Moon's delirium tremens and did not seek medical attention. (Id. at 11.) She was

also on the night shift May 11, 2019 and able to observe David Moon unconscious on his bunk. (Id. at 13.)

Defendant McRee was also a jailer and between May 7 and May 9, 2019, he observed David Moon hallucinating, confused, disoriented, and agitated. (Id. at 7.) On May 11, 2019, Defendant McRee was able to observe David Moon unconscious on his bunk and was aware he was going through alcohol withdrawal. (Id. at 13; Doc. 95, at 20.)

The Court finds Defendants Durden, Dye, and McRee acted within their discretionary authority during the alleged instances, as they were performing job-related functions. No evidence illustrates these Defendants disregarded David Moon's condition with more than mere negligence. In fact, Defendants Dye and McRee saw David Moon on a very limited basis and Defendant Durden continually checked on David Moon, tended to his toes, and ensured he was moved to his cot. Nothing shows these Defendants were deliberately indifferent to David Moon's condition; therefore, they are entitled to qualified immunity.

### f. *Officers Antonio Norman and Cassandra Smith*

Defendants Norman and Smith were both jailers and conducted David Moon's medical screening when he was booked in the jail. (Am. Compl., at 6.) One of them recorded that David Moon was not intoxicated or under the influence, did not have any drug or alcohol use that could cause withdrawal problems, and that he had

never been incarcerated at the jail. (Id.) Between May 7 and May 9, 2019, both Defendant Norman and Defendant Smith observed David Moon hallucinating, confused, disoriented, and agitated. (Id. at 7.) On May 9, 2019, Defendant Norman moved David Moon because he had been awake for two days and was disturbing the other inmates. (Id.) Defendants Norman and Smith were also on duty May 9 and/or May 10, 2019, personally witnessed David Moon's delirium tremens, and did not seek medical transport. (Id. at 8.) Defendant Norman remembers seeing David Moon going through alcohol withdrawal, but Defendant Smith barely remembers even seeing him while he was incarcerated. (Doc. 95, at 22-23.)

Defendants Norman and Smith were performing their job responsibilities by conducting David Moon's medical screening, and therefore were acting within their discretionary authority. Although the information obtained ended up being false, there is no evidence showing these Defendants acted with more than mere negligence. Plaintiff alleges the jailers falsely recorded the medical screening information but even if they did, there is no evidence this caused David Moon's death. The Medical Defendants evaluated and treated David Moon when his symptoms arose, so the medical screening was not causally tied to David Moon's death. Therefore, Plaintiff has failed to allege a constitutional violation, and Defendant Norman and Defendant Smith are entitled to qualified immunity.

g. *Officers Aries Hunter, Harriett Brehm, Keonna Lewis, Anastasia Knotts, and Sergeant Lisa Gartrell*

Defendant Hunter was a jailer on duty May 10, 2019 and personally witnessed David Moon's delirium tremens. (Am. Compl., at 8.) During her shift change, she informed other jailers that David Moon was in isolation and kicking his door. (Id. at 10.) She also told Defendant Terry these were the worst withdrawals she had ever seen. (Doc. 90-7, at 24.) During her morning shift on May 11, 2019, Defendant Hunter and other jailers gave David Moon his hydroxyzine pill and a sandwich which he never ate. (Am. Compl., at 11.)

Defendant Brehm was also a jailer and between May 7 and May 9, 2019, she observed David Moon hallucinating, confused, disoriented, and agitated. (Id. at 7.) Defendant Brehm was also on duty May 9 and/or May 10, 2019 and personally witnessed David Moon's delirium tremens but did not seek medical transport. (Id. at 8.) She was concerned about David Moon being in the jail because "he can't get anything to drink." (Doc. 90-12, at 44.)

Defendant Lewis was also a jailer and between May 7 and May 9, 2019, she observed David Moon hallucinating, confused, disoriented, and agitated. (Am. Compl., at 7.) Defendant Lewis was also on duty May 9 and/or May 10, 2019 and personally witnessed David Moon's delirium tremens but did not seek medical transport. (Id. at 8.)

Defendant Knotts was also a jailer and between May 7 and May 9, 2019, she observed David Moon hallucinating, confused, disoriented, and agitated. (Id. at 7.) Defendant Knotts was also on duty May 9 and/or May 10 as well as May 11, 2019 and personally witnessed David Moon's delirium tremens but did not seek medical transport. (Id. at 8, 11.)

Defendant Gartrell was also a jailer on duty May 10, 2019 and personally witnessed David Moon's delirium tremens but did not seek medical transport. (Id. at 8.) During her morning shift on May 11, 2019, Defendant Gartrell and other jailers gave David Moon his hydroxyzine pill and a sandwich which he never ate. (Id. at 11.) Later that day, Defendant Gartrell and Defendant Durden directed two trustees to pick up an unconscious David Moon and put him on his cot. (Id. at 12.) She knew David Moon was "missing" the alcohol. (Doc. 95, at 26.)

Defendants Hunter, Brehm, Lewis, Knotts, and Gartrell were performing job-related functions during the alleged times, and therefore acted within their discretionary authority. Plaintiff does not allege any constitutional violations amounting to deliberate indifference, so these Defendants are entitled to qualified immunity. Even though the Defendants were aware of David Moon's alcohol withdrawal, that alone is insufficient to establish that they were deliberate indifferent.

h. *Conclusion*

Based on the foregoing, the Court finds insufficient evidence to prove any constitutional violations by the Sheriff Defendants. Therefore, each of the Sheriff Defendants is entitled to qualified immunity.

Plaintiff asserts Eleventh Circuit precedent does not permit the Court to reach this outcome, but the Court disagrees. Primarily, he relies on four cases which the Court will briefly address. In Lancaster, and in Patel, which overruled part of Lancaster, the facts are distinguishable from this case. In Lancaster, the inmate's wife told the jailers that he had recently been hospitalized for seizures due to alcohol withdrawals, so they were on clear notice of an underlying condition and the fact he might seize at any given time. 116 F.3d at 1421-22. Although David Moon was known as a heavy alcohol drinker, that was insufficient to put the Defendants on notice of any underlying or life-threatening side effects. Further, in Lancaster there was no medical staff at the jail responsible for monitoring the inmates, so it is feasible the jailers were under stricter scrutiny for their supervision. Id. In Patel, the Court found qualified immunity did not apply because the officers did *nothing*. 969 F.3d at 1191. The Court explained that it was "not a case in which a law-enforcement officer provided inadequate aid" but rather, he did nothing. Id. The facts again do not align with David Moon's

41

treatment, because in Patel they flatly ignored the inmate and David Moon was not flatly ignored. Similarly, in Harper v. Lawrence Cnty., no treatment was provided for an inmate going through alcohol withdrawal who informed them he had a history of seizures. 592 F.3d 1227, 1234 (11th Cir. 2010). Once again, there was no medical team providing treatment or instructions, simply the jail staff discussing among themselves what to do, and never acting. Id. at 1235. Further, Morrison v. Washington Cnty., 700 F.2d 678 (11th Cir. 1983) presents very different issues because it involved an inmate erroneously released from the hospital without a treatment plan and placed in a jail cell without proper medical supervision. This is dissimilar to the facts at issue because David Moon was never hospitalized or forgotten. He had a treatment plan, in line with the jail protocols, and was monitored accordingly. In Harper, the Eleventh Circuit discussed how "Morrison clearly established that sheriffs and jailers cannot place or keep a chronic alcoholic in jail *without any medical supervision*, when the defendants are aware that the alcoholic is suffering from a severe form of alcohol withdrawal." Harper, 592 F.3d at 1236 (citations omitted) (emphasis added). However, David Moon was receiving medical supervision from the Medical Defendants, so the facts of Morrison do not align. Plaintiff also cites the Fifth Circuit's decision in Fielder v. Bosshard for finding deliberate indifference when sheriff and jail officials

refused medical treatment for alcohol withdrawal. 590 F.2d 105 (5th Cir. 1979). Once again, this can be differentiated because the Sheriff Defendants did not "wait" to give medical care to David Moon, they simply relied on the care given by Defendants Williams and Terry, in line with jail protocols. (Doc. 88-2, at 14.) Therefore, none of the cases Plaintiff cites are properly applied to this case.

### iii. Supervisory Liability Claim

Plaintiff alleges Defendants Reviere, Cobb, and Taylor (the "Supervisor Defendants") participated in the unconstitutional conduct of the other Defendants which resulted in David Moon receiving no medical attention as required by clearly established law. (Am. Compl., at 16.) Further, he alleges the Supervisor Defendants were subjectively aware of David Moon's serious medical needs and were deliberately indifferent to his needs by failing to direct their subordinates to seek immediate medical treatment and as a result, David Moon suffered. Plaintiff also alleges they were aware of, and condoned, a wide-spread practice of failing to conduct proper medical screenings, failing to treat alcohol withdrawal as a medical emergency, and failing to train jailers that delirium tremens is a "life-threatening serious medical need" which were moving forces behind David Moon's constitutional deprivations. (Id. at 17.)

43

a. *Supervisory Liability Standard*

Supervisory liability under Section 1983 involves the same qualified immunity analysis used for personal participation claims. First, the Court must determine if there was a violation of a constitutional right and then whether those rights were clearly established. Typically, "supervisory officials are not [] liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted); accord Stallworth v. Wilkins, 802 F. App'x 435 (11th Cir. 2020). Supervisory liability occurs when the defendant "personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions." Harper, 592 F.3d at 1236.

To establish a causal connection, Plaintiff must show either: (1) "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged [constitutional] deprivation, and he fail[ed] to do so," (2) "a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights," or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003),

*abrogated in part on other grounds by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010) (quoting Gonzalez, 325 F.3d at 1234-45 (11th Cir. 2003)) (internal quotation marks omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, at 1360-61 (quoting Gonzalez, 325 F.3d at 1234) (alterations in original).

    b. *Analysis*

The Supervisor Defendants argue that Plaintiff cannot prove: (1) they personally participated in any alleged constitutional violation, (2) there was a policy that resulted in deliberate indifference, (3) any supervisor directed the unlawful action or knowingly failed to prevent it, or (4) that a history of widespread abuse put them on notice of an alleged deprivation they failed to correct. Plaintiff asserts Defendants Cobb and Taylor personally participated in the constitutional violations and Defendant Reviere was aware of the unconstitutional policies used for detoxing inmates. (Doc. 95, at 31-32.)

As a preliminary matter, when it has been found that subordinates did not participate in unconstitutional conduct, it

is improper for supervisors to be held liable. See Mitchell v. McKeithen, 672 F. App'x 900, 903-904 (11th Cir. 2016) (finding supervisor cannot be held liable when court found subordinate did not violate constitutional rights). Since the Court found Plaintiff did not prove any constitutional violations sufficient to overcome the Sheriff Defendants' qualified immunity, there is no unconstitutional conduct for which to hold the Supervisor Defendants liable.

Nevertheless, Plaintiff alleges the Supervisor Defendants failed to direct their subordinates to seek out immediate medical treatment and "condoned a wide-spread practice in the jail of failing to conduct proper medical screenings, failing to treat alcohol withdrawal as a medical emergency, and failing to train jailers that delirium tremens is a life-threatening serious medical need." (Am. Compl., ¶¶ 73, 75.) However, no evidence supports these conclusory allegations. There is no evidence showing any alleged "wide-spread practices" existed in the jail. As far as the evidence illustrates, David Moon was the first alcohol withdrawal death in the jail, and there are no other allegations of improper medical screenings or situations involving delirium tremens and jailers being ill-prepared. As stated above, an isolated occurrence is not enough to constitute wide-spread abuse. See Brown, 906 F.2d at 671. For a policy to be unconstitutional, it must be found that "no set of circumstances

exists under which the [policy] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).   Here, no circumstances, other than that of David Moon, even suggest there was an unconstitutional policy; the facts therefore support finding a valid policy. Plaintiff presents an isolated occurrence of alcohol withdrawal and delirium tremens gone wrong, which is insufficient to establish a history of widespread abuse.   Further, no facts support an inference that the Supervisor Defendants directed their subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them.   The evidence proves the Supervisor Defendants were satisfied the Medical Defendants were treating David Moon, and there was nothing further to be done. "[S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care." Williams v. Limestone Cnty., 198 F. App'x 893, 897 (11th Cir. 2006) (citation omitted).   Therefore, the Supervisor Defendants were within their rights to trust the Medical Defendants in this instance and are therefore entitled to summary judgment.

   iv. Policymaker Liability Claim

   Plaintiff alleges an additional claim that Defendant Reviere initiated or maintained a policy or practice whereby inmates suffering from alcohol withdrawal would simply be observed or held for observation without obtaining medical care, disregarding the seriousness of the medical need.   (Am. Compl., at 18-19.)   He

asserts that by maintaining this policy, regardless of the extent of their symptoms, Defendant Reviere was deliberately indifferent to David Moon's serious medical needs. (Id.) This is simply an additional supervisory liability claim, which as discussed above, is not factually supported.

Plaintiff alleges insufficient facts to prove a facially unconstitutional policy. He simply offers conclusory language, deprived of factual support, to say Defendant Reviere maintained various policies that deprived David Moon of his civil rights. See Marsh v. Butler Cnty., 268 F.3d 1014, 1036, abrogated in part by Abella v. Rodriguez, 824 F. App'x 918 (11th Cir. 2020) (finding no policymaker liability when no facts show sheriff knew the policy posed a sufficiently substantial risk of serious harm to inmates). "An official cannot be held liable just for instituting a facially constitutional policy." Id. (citation omitted). To be facially unconstitutional, it must be found that "no set of circumstances exists under which the [policy] would be valid." Salerno, 481 U.S. at 745. "Normally[,] random acts or isolated incidents are insufficient to establish a custom or policy." Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986) (citation omitted). As supported by the facts in this case, David Moon was the first inmate to die from alcohol withdrawal and although unfortunate, there is insufficient evidence to prove there is a policy that facially deprives inmates of their civil rights. Based on the

foregoing, Defendant Reviere is entitled to summary judgment in his favor as to the policymaker liability claim.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Medical Defendants' motion for summary judgment (Doc. 84) and the Sheriff Defendants' motion for summary judgment (Doc. 88) are **GRANTED.** The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _____ day of August, 2021.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA